**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **SERGIO L. ONTIVEROS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | |
| | § | |
| **CITGO REFINING AND CHEMICALS** | § | **2:26-v-00220** |
| **COMPANY, L.P. a/k/a "CITGO** | § | |
| **REFINERY" a/k/a "CITGO," and** | § | **JURY TRIAL DEMANDED** |
| **CITGO PETROLEUM CORPORATION,** | § | |
| | § | |
| **Defendants.** | § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Plaintiff Sergio L. Ontiveros ("Plaintiff" or "Ontiveros"), complaining of Defendants CITGO Refining and Chemicals Company, L.P. and CITGO Petroleum Corporation (collectively, "CITGO" or "Defendants"), and for cause of action would respectfully show the Court as follows:

## I.  NATURE OF THE ACTION

1.  This is an action for disability discrimination, failure to accommodate, unlawful medical examination, and retaliation under the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 et seq. (the "ADA"); for interference and retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (the "FMLA"); and for disability discrimination and retaliation under Chapter 21 of the Texas Labor Code (the "TCHRA"). Plaintiff worked at CITGO's Corpus Christi Refinery for approximately twenty-eight (28) years, fourteen (14) of them as a direct CITGO employee, without a single write-up or disciplinary action. Within approximately three months of his return from a year of FMLA

and medical leave for a serious ankle injury requiring seven surgeries, CITGO's Human Resources representative told Plaintiff to his face that he was "a liability to the company" because of his injury and that he "never should have been allowed to come back to work," sent him home, and gave him the choice to resign or be terminated. CITGO now advances an entirely different, after-the-fact justification for ending his employment. Plaintiff seeks all relief available under the ADA, the FMLA, and the TCHRA.

## II. PARTIES

2. Plaintiff Sergio L. Ontiveros is an individual citizen and resident of Orange Grove, Jim Wells County, Texas, which lies within the Corpus Christi Division of the Southern District of Texas. Plaintiff is a former employee of Defendants.

3. Defendant CITGO Refining and Chemicals Company, L.P. a/k/a "CITGO Refinery" a/k/a "CITGO" is a foreign limited partnership registered to transact business in the State of Texas and doing business at 1802 Nueces Bay Boulevard, Corpus Christi, Nueces County, Texas 78407. Defendant CITGO Refining and Chemicals Company, L.P. has affirmatively represented, through counsel, that it was Plaintiff's employer. This Defendant may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201, or wherever it may be found. However, a request for waiver is being sent prior to any request for service.

4. Defendant CITGO Petroleum Corporation is a foreign for-profit corporation registered to transact business in the State of Texas, doing business in Nueces County, Texas, and is pleaded in the alternative and/or as a joint, integrated, and/or single employer of Plaintiff together with CITGO Refining and Chemicals Company, L.P. This Defendant may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas

75201, or wherever it may be found. However, a request for waiver is being sent prior to any request for service.

5. At all times material to this Complaint, each Defendant was an "employer" within the meaning of 42 U.S.C. § 12111(5), 29 U.S.C. § 2611(4), and Texas Labor Code § 21.002(8), and employed more than five hundred (500) employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

### III.  JURISDICTION AND VENUE

6. This Court has original subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5), and 29 U.S.C. § 2617(a)(2).

7. This Court has supplemental jurisdiction over Plaintiff's state-law claims arising under Chapter 21 of the Texas Labor Code pursuant to 28 U.S.C. § 1367(a), because those claims arise from the same case or controversy and share a common nucleus of operative fact with Plaintiff's federal claims.

8. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices alleged herein were committed in this District, the employment records relevant to those practices are maintained and administered in this District, and Plaintiff would have continued to work in this District but for the unlawful conduct alleged.

9. Venue is proper in the Corpus Christi Division because all or a substantial part of the events giving rise to Plaintiff's claims occurred at CITGO's Corpus Christi Refinery in Nueces County, Texas, and Plaintiff resides in Jim Wells County, Texas, both of which lie within this Division.

## IV.  ADMINISTRATIVE EXHAUSTION AND CONDITIONS PRECEDENT

10. On or about January 8, 2026, Plaintiff filed a verified Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), San Antonio Field Office, which was assigned EEOC Charge No. 451-2026-01820 and dual-filed with the Texas Workforce Commission, Civil Rights Division, pursuant to the agencies' worksharing agreement. In that Charge, Plaintiff alleged discrimination, harassment, and retaliation on the basis of disability, perceived disability, and his exercise of rights under the FMLA.

11. On February 26, 2026, CITGO, through counsel, submitted a Position Statement responding to the Charge.

12. On May 4, 2026, the EEOC issued its Determination and Notice of Rights, dismissing the Charge and notifying Plaintiff of his right to file suit within ninety (90) days of receipt.

13. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the EEOC's Determination and Notice of Rights and is therefore timely.

14. Plaintiff's claims under Chapter 21 of the Texas Labor Code are likewise timely. Plaintiff's Charge was dual-filed with the Texas Workforce Commission, Civil Rights Division, within one hundred eighty (180) days of the unlawful employment practice; more than sixty (60) days have elapsed since the filing of that complaint; and this action is brought within two (2) years of the filing of the complaint with the Commission. See Tex. Lab. Code §§ 21.201, 21.202, 21.252, 21.254, 21.256.

15. Plaintiff has exhausted all administrative remedies and satisfied all conditions precedent to the filing of this suit, or such conditions have been waived, excused, or otherwise satisfied. No exhaustion requirement applies to Plaintiff's claims under the FMLA.

## V.  FACTUAL BACKGROUND

***A. Plaintiff's twenty-eight-year, discipline-free record at the Refinery.***

16. Plaintiff began working at CITGO's Corpus Christi Refinery (the "Refinery") in May 1997 as a contract employee of Power Repair Service.

17. On or about June 6, 2011, CITGO hired Plaintiff directly as a permanent employee.

18. In or about 2022, CITGO promoted Plaintiff to a supervisory position in the Machine Shop. At the time of his separation, Plaintiff held the position of Maintenance Supervisor and earned annual compensation of approximately $165,000.00, inclusive of bonus, together with employer-provided health insurance and other benefits for himself and his dependents.

19. Throughout his approximately twenty-eight (28) years at the Refinery — including fourteen (14) years as a direct CITGO employee — Plaintiff was never written up, disciplined, counseled, or placed on any performance improvement plan for any reason. He worked holidays, made himself available for call-outs, and responded to emergency call-outs throughout his career.

***B. Plaintiff sustains a serious injury and takes protected leave.***

20. On or about January 12, 2024, Plaintiff sustained a non-work-related injury, fracturing his ankle.

21. Due to post-surgical complications and a severe infection, Plaintiff ultimately underwent a total of seven (7) surgeries on the affected ankle.

22. Plaintiff's condition constituted a "serious health condition" within the meaning of 29 U.S.C. § 2611(11) and a "disability" within the meaning of 42 U.S.C. § 12102 and Texas Labor Code § 21.002(6), in that it substantially limited one or more of Plaintiff's major life activities, including but not limited to walking, standing, lifting, bending, and working, and it affected the operation of his musculoskeletal system.

23. Plaintiff requested and was granted leave under the FMLA beginning in or about January 2024. After his FMLA entitlement was exhausted, Plaintiff remained on medical leave and short-term disability. In total, Plaintiff was absent from work on protected and/or medical leave for approximately thirteen (13) months.

24. In or about November 2024, Plaintiff's healthcare provider advised CITGO that Plaintiff remained unable to return to work at that time, and CITGO requested information concerning Plaintiff's need for continued leave or other accommodation.

### C. *Plaintiff is medically released without restrictions but is singled out for an additional four-hour medical examination.*

25. In or about February 2025, Plaintiff's treating physician released him to return to work with no restrictions of any kind.

26. Plaintiff thereafter submitted to and passed CITGO's standard return-to-work fitness-for-duty physical examination, which lasted approximately one (1) hour.

27. Notwithstanding Plaintiff's unrestricted medical release and his having passed CITGO's standard fitness-for-duty examination, CITGO required Plaintiff to submit to a second, substantially more extensive medical examination lasting approximately four (4) hours at a physician's office of CITGO's designation.

28. On information and belief, CITGO does not require a four-hour medical examination of employees returning from absences unrelated to a medical condition or perceived medical condition, and the second examination was neither job-related nor consistent with business necessity.

29. Plaintiff passed the second examination as well. Plaintiff's healthcare provider certified that Plaintiff was able to return to work without restriction and that he required no accommodation.

30. Plaintiff returned to active duty on or about February 26, 2025, and resumed his supervisory role.

31. From his return in February 2025 through June 2, 2025, Plaintiff performed his job duties fully and satisfactorily. He received no complaint, criticism, warning, or discipline of any kind concerning his performance or conduct.

### D.  Plaintiff follows his manager's direct instruction regarding the Company toolbox.

32. CITGO had issued Plaintiff a Company toolbox and tools years earlier, when Plaintiff worked as an hourly machinist. Following his 2022 promotion to a supervisory position, Plaintiff no longer used those tools in the performance of his duties.

33. CITGO contends that Plaintiff's supervisor, Machine Shop Manager Michael Meacham, directed Plaintiff to unlock the toolbox in 2022 and again in January 2024. Plaintiff was never written up, warned, counseled, suspended, or disciplined in any manner in connection with the toolbox at any time during 2022, 2023, or 2024, notwithstanding that he continued to work in his supervisory role throughout that period.

34. On Friday, May 23, 2025, less than three months after Plaintiff returned from medical leave, Meacham telephoned Plaintiff and told him, in substance: "Your toolbox in the back, I need you to make it disappear, or we're going to throw it away."

35. Plaintiff did not want CITGO's tools thrown away. Acting in direct reliance on Meacham's instruction, Plaintiff arranged for the toolbox to be taken to the Refinery warehouse, where he could obtain assistance loading it into his truck.

36. Plaintiff told the warehouse employee who assisted him precisely what Meacham had said to him. Plaintiff also told his girlfriend that same day what Meacham had said to him.

37. Plaintiff concealed nothing. The toolbox was a large, freestanding chest that had to be moved by forklift. It was moved during working hours, through the Refinery warehouse, with the assistance of CITGO personnel, and in full view of CITGO's security cameras.

38. Because Plaintiff had been out of work for more than a year, he no longer even possessed the key to the toolbox.

39. The tools in the toolbox are pneumatic tools requiring compressors and turbines to operate. Plaintiff had no use for them at his residence and no ability to operate them there.

40. The toolbox was still sitting in the bed of Plaintiff's truck when Plaintiff returned to work the following work day. Plaintiff made no effort to hide, sell, conceal, or dispose of it.

**E.  CITGO tells Plaintiff he is "a liability" because of his injury and forces him out.**

41. On or about June 2, 2025, Plaintiff was summoned to the Human Resources office at the Refinery by Human Resources representative Tracey Lawson.

42. Lawson told Plaintiff, in substance and in words to that effect, that he was being sent home; that he was "a liability to the company due to [his] injury"; and that he "never should have been allowed to come back to work."

43. Lawson gave Plaintiff no other reason for the decision. She did not tell Plaintiff that he was suspected of theft, that he had violated any policy, or that his employment was in jeopardy for any reason other than his injury.

44. Plaintiff was sent home and was thereafter given an ultimatum: resign or be terminated.

45. On July 28, 2025, under duress and with no meaningful alternative, Plaintiff transmitted a one-sentence e-mail stating that he "choose[s] to Resign." CITGO has since characterized that separation as a "resignation in lieu of termination," confirming that the decision to end Plaintiff's employment was CITGO's, not Plaintiff's.

46. Plaintiff's separation was not voluntary. It was a discharge, and in the alternative, a constructive discharge, effected by CITGO because of Plaintiff's disability, his record of disability, CITGO's perception that he was disabled, and his exercise of rights protected by the FMLA and the ADA.

### F. CITGO's stated reasons are false and pretextual.

47. Only after Plaintiff filed his Charge of Discrimination did CITGO assert, for the first time, that Plaintiff was separated because he "stole" a Company toolbox.

48. CITGO's post hoc justification is false. Plaintiff did exactly what his manager instructed him to do. He did not steal anything.

49. CITGO's shifting explanations, telling Plaintiff at the time that he was "a liability" because of his injury, and telling the EEOC months later that he was a thief, are themselves evidence of pretext.

50. The circumstances surrounding the removal of the toolbox are inconsistent with theft: Plaintiff acted openly, on his manager's instruction, with the assistance of CITGO employees to whom he disclosed that instruction, in a location covered by CITGO security cameras, using a Company forklift, and he left the toolbox in plain view in the bed of his truck when he returned to work. Plaintiff lacked the key to the toolbox and lacked any means or purpose to use its contents.

51. CITGO's asserted concern about the toolbox is further undermined by its own timeline. CITGO claims that Plaintiff failed to comply with directives to unlock the toolbox beginning in 2022 and again in January 2024, yet CITGO imposed no discipline of any kind for approximately three years — until immediately after Plaintiff returned from a thirteen-month medical leave.

52. On information and belief, similarly situated CITGO employees who had not taken extended medical leave, who did not have a record of a disabling condition, and who were not

regarded by CITGO as disabled were not discharged, constructively discharged, or forced to resign for comparable conduct.

53. On information and belief, CITGO did not conduct a good-faith or impartial investigation. Among other things, CITGO failed to credit or meaningfully investigate Plaintiff's account that Meacham had instructed him to make the toolbox "disappear," and failed to interview or credit the warehouse employee to whom Plaintiff relayed that instruction.

54. Plaintiff's disability, record of disability, perceived disability, and/or his exercise of rights under the FMLA and the ADA were motivating factors and but-for causes of the adverse employment actions taken against him.

## G. Damages.

55. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, including lost wages, salary, bonuses, employment benefits (including health insurance for himself and his dependents), retirement contributions, and other compensation, both past and future.

56. Plaintiff, who had approximately fifteen (15) years remaining before retirement, has been unable to obtain comparable employment. His savings were depleted during his thirteen-month medical leave, he has been unable to meet his financial obligations, he is at risk of losing his home, he has lost health insurance for himself and his children, and he has been unable to continue providing financial support to his elderly parents and his children.

57. Plaintiff has also suffered and continues to suffer emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary losses.

58. Defendants' conduct was undertaken with malice and/or with reckless indifference to Plaintiff's federally and state-protected rights, entitling Plaintiff to punitive damages, and Defendants' violations of the FMLA were willful and were not undertaken in good faith or on reasonable grounds, entitling Plaintiff to liquidated damages.

59. Plaintiff has been required to retain the undersigned counsel and has agreed to pay reasonable attorney's fees for the prosecution of this action.

## VI.  CAUSES OF ACTION

### COUNT I — INTERFERENCE WITH FMLA RIGHTS (29 U.S.C. § 2615(a)(1))

60. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

61. At all material times, each Defendant was an "employer" as defined by 29 U.S.C. § 2611(4), and Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611(2), having been employed by Defendants for more than twelve (12) months and for at least 1,250 hours during the twelve months preceding his leave, at a worksite where Defendants employed fifty (50) or more employees within seventy-five (75) miles.

62. Plaintiff suffered from a "serious health condition" as defined by 29 U.S.C. § 2611(11) and was entitled to take leave under 29 U.S.C. § 2612(a)(1)(D).

63. Plaintiff gave Defendants adequate notice of his need for FMLA leave, and Defendants had actual notice of his serious health condition.

64. Defendants interfered with, restrained, and/or denied Plaintiff's exercise of, and attempt to exercise, rights protected by the FMLA, in violation of 29 U.S.C. § 2615(a)(1), including by failing to restore Plaintiff to his position free of adverse consequences, by conditioning his continued employment on additional medical scrutiny not job-related or

consistent with business necessity, and by ending his employment because he had taken protected leave.

65. Defendants' violations were willful within the meaning of 29 U.S.C. § 2617(c)(2).

66. As a direct and proximate result, Plaintiff has suffered damages recoverable under 29 U.S.C. § 2617, including lost wages, salary, employment benefits, and other compensation, together with interest, an additional equal amount as liquidated damages, equitable relief including reinstatement or front pay in lieu thereof, and reasonable attorney's fees, expert witness fees, and costs.

### COUNT II — RETALIATION UNDER THE FMLA (29 U.S.C. § 2615(a)(2))

67. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

68. Plaintiff engaged in activity protected by the FMLA by requesting and taking leave for his serious health condition.

69. Defendants subjected Plaintiff to adverse employment actions, including but not limited to requiring an additional four-hour medical examination, removing him from the workplace on June 2, 2025, and discharging or constructively discharging him effective July 28, 2025.

70. A causal connection exists between Plaintiff's protected activity and the adverse employment actions, as evidenced by, among other things, the close temporal proximity between his return from thirteen months of leave and his removal from the workplace; the express statement by CITGO's Human Resources representative that he was "a liability to the company due to [his] injury" and "never should have been allowed to come back to work"; and CITGO's shifting and pretextual explanations.

71. Defendants' stated reasons for the adverse actions are pretextual, and Defendants' violations were willful.

72. As a direct and proximate result, Plaintiff is entitled to all damages and relief available under 29 U.S.C. § 2617.

## COUNT III — DISABILITY DISCRIMINATION UNDER THE ADA (42 U.S.C. § 12112(a))

73. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

74. Plaintiff is an individual with a disability within the meaning of 42 U.S.C. § 12102(1)(A), in that his ankle injury and its sequelae substantially limited one or more major life activities, including walking, standing, lifting, bending, and working, and affected the operation of his musculoskeletal system.

75. In the alternative, Plaintiff has a record of such an impairment within the meaning of 42 U.S.C. § 12102(1)(B).

76. In the further alternative, Defendants regarded Plaintiff as having such an impairment within the meaning of 42 U.S.C. §§ 12102(1)(C) and 12102(3). CITGO's Human Resources representative expressly told Plaintiff that he was "a liability to the company due to [his] injury" and that he "never should have been allowed to come back to work," notwithstanding that Plaintiff had twice been medically cleared without restriction.

77. Plaintiff was a qualified individual under 42 U.S.C. § 12111(8): he possessed the requisite skill, experience, education, and other job-related requirements, and he could perform the essential functions of his position, which he had performed for CITGO for fourteen years, with or

without reasonable accommodation. Indeed, he had been released to full duty without any restriction.

78. Defendants subjected Plaintiff to adverse employment actions because of his disability, his record of disability, and/or because Defendants regarded him as disabled, in violation of 42 U.S.C. § 12112(a).

79. Defendants' proffered reasons for those actions are false and pretextual.

80. As a direct and proximate result, Plaintiff has suffered and continues to suffer the damages described above and is entitled to all relief available under 42 U.S.C. §§ 12117 and 2000e-5(g) and 42 U.S.C. § 1981a, including back pay, front pay, reinstatement, compensatory damages, punitive damages, prejudgment and postjudgment interest, and reasonable attorney's fees, expert fees, and costs.

## COUNT IV — FAILURE TO ACCOMMODATE AND FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS (42 U.S.C. § 12112(b)(5))

81. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein. This Count is pleaded in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

82. Defendants knew of Plaintiff's disability and/or record of disability.

83. To the extent Defendants contend that Plaintiff's medical condition rendered him unable to perform the essential functions of his position, as is necessarily implied by their statement that he was "a liability to the company due to [his] injury" and "never should have been allowed to come back to work" , Defendants were obligated to engage in a good-faith, interactive process with Plaintiff to identify a reasonable accommodation, including reassignment to a vacant position for which he was qualified.

84. Defendants failed to engage in any such interactive process. Instead of exploring accommodation, Defendants removed Plaintiff from the workplace and forced him to resign or be terminated.

85. Reasonable accommodations existed that would have permitted Plaintiff to continue in employment without imposing an undue hardship on Defendants.

86. As a direct and proximate result, Plaintiff has suffered damages and is entitled to all relief available under the ADA.

### COUNT V — UNLAWFUL MEDICAL EXAMINATION AND INQUIRY (42 U.S.C. § 12112(d)(4))

87. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

88. The ADA prohibits a covered entity from requiring a medical examination of an employee, or making inquiries as to whether an employee is an individual with a disability or as to the nature or severity of the disability, unless the examination or inquiry is shown to be job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A).

89. After Plaintiff was released to work without restriction by his treating physician and after he passed CITGO's standard, approximately one-hour fitness-for-duty examination, CITGO required him to undergo a second, approximately four-hour medical examination by a physician of CITGO's choosing.

90. That second examination was not job-related and was not consistent with business necessity. It was instead a product of Defendants' perception that Plaintiff was disabled and a "liability" by reason of his injury.

91. Plaintiff was injured by this violation, including through the burden and indignity of the unlawful examination and through the discriminatory scrutiny and adverse actions that followed from it.

### COUNT VI — RETALIATION UNDER THE ADA (42 U.S.C. § 12203)

92. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

93. Plaintiff engaged in activity protected by the ADA, including requesting and taking leave for his medical condition, seeking to return to work with the protections of the ADA, and opposing practices made unlawful by the ADA.

94. Defendants subjected Plaintiff to materially adverse actions that would dissuade a reasonable employee from engaging in protected activity, including removing him from the workplace and ending his employment.

95. A causal connection exists between Plaintiff's protected activity and the adverse actions, and Defendants' stated reasons are pretextual.

96. As a direct and proximate result, Plaintiff has suffered damages and is entitled to all relief available under 42 U.S.C. §§ 12203 and 12117.

### COUNT VII — DISABILITY DISCRIMINATION AND RETALIATION UNDER CHAPTER 21 OF THE TEXAS LABOR CODE

97. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

98. At all material times, each Defendant was an "employer" within the meaning of Texas Labor Code § 21.002(8), and Plaintiff was an "employee" within the meaning of Chapter 21.

99. Plaintiff had a disability, a record of a disability, and/or was regarded as having a disability within the meaning of Texas Labor Code §§ 21.002(6) and 21.0021.

100.    Defendants discharged Plaintiff and otherwise discriminated against him with respect to the terms, conditions, and privileges of his employment because of his disability, in violation of Texas Labor Code § 21.051.

101.    Defendants further failed to make reasonable workplace accommodations, in violation of Texas Labor Code § 21.128, and retaliated against Plaintiff for engaging in protected activity, in violation of Texas Labor Code § 21.055.

102.    Chapter 21 is intended to correlate state law with federal law in the area of employment discrimination, and the analysis of Plaintiff's Chapter 21 claims parallels the analysis of his ADA claims set forth above.

103.    As a direct and proximate result, Plaintiff is entitled to all relief available under Texas Labor Code §§ 21.258, 21.2585, and 21.259, including back pay, front pay or reinstatement, compensatory damages, punitive damages, prejudgment and postjudgment interest, and reasonable attorney's fees, expert fees, and costs.

## VII.  AGENCY AND RESPONDEAT SUPERIOR

104.    Whenever in this Complaint it is alleged that a Defendant did any act or thing, it is meant that such Defendant's officers, directors, agents, servants, employees, or representatives did such act or thing, and that at the time such act or thing was done, it was done with the full authorization or ratification of such Defendant, or was done in the ordinary course and scope of the employment or agency of such Defendant's officers, directors, agents, servants, employees, or representatives.

## VIII.  JURY DEMAND

105.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues and claims so triable.

## IX.  PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Sergio L. Ontiveros respectfully prays that Defendants be cited to appear and answer herein, and that upon final trial, Plaintiff have judgment against Defendants, jointly and severally, for the following:

a.   All actual damages, including back pay (with interest), lost bonuses, lost employment benefits, lost retirement contributions, and other compensation lost as a result of Defendants' unlawful conduct;

b.   Reinstatement to Plaintiff's former position, or, if reinstatement is not feasible, front pay and benefits for a reasonable period of time;

c.   Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary losses, pursuant to 42 U.S.C. § 1981a and Texas Labor Code § 21.2585;

d.   Punitive damages pursuant to 42 U.S.C. § 1981a(b)(1) and Texas Labor Code § 21.2585;

e.   Liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii) in an amount equal to the sum of the wages, salary, employment benefits, and other compensation denied or lost, plus interest;

f.   All equitable relief necessary to redress Defendants' violations of the FMLA, the ADA, and Chapter 21 of the Texas Labor Code, including injunctive relief and an order requiring Defendants to expunge from Plaintiff's personnel records any reference to theft, dishonesty, or misappropriation of Company property;

g.   Prejudgment and postjudgment interest at the maximum rates allowed by law;

h.  Reasonable and necessary attorney's fees, expert witness fees, and costs of court, including fees on appeal, pursuant to 42 U.S.C. §§ 12117 and 12205, 29 U.S.C. § 2617(a)(3), and Texas Labor Code § 21.259; and

i.  Such other and further relief, at law or in equity, to which Plaintiff may show himself justly entitled.

**Respectfully submitted,**

**PONCIO LAW OFFICES**
**A Professional Corporation**
**5410 Fredericksburg Road, Suite 109**
**San Antonio, Texas 78229-3550**
**Telephone: (210) 212-7979**
**Facsimile: (210) 212-5880**

**By:  /s/ Adam Poncio**
**ADAM PONCIO**
**State Bar No. 16109800**
**S.D. Tex. ID No. 194847**
**aponcio@ponciolaw.com**

**ALAN BRAUN**
**State Bar No. 24054488**
**S.D. Tex. ID No. 1428056**
**abraun@ponciolaw.com**

**ATTORNEYS FOR PLAINTIFF**
**SERGIO L. ONTIVEROS**